STATE v. GUS BROWN.

(Decided December 22, 1899.)

*Indictment—Carrying Concealed Deadly Weapon about the Person—Guilty Intent.*

1. The guilty intent is the intent to carry the weapon concealed, and not the intent to use it; if carried openly, the defendant would not be guilty, under the statute, Code, sec. 1005.

2. The question is as to the *manner* of carrying, whether concealed or not, and it might be shown, in defense, that there was no intent to conceal it.

3. To rebut the statutory presumption arising from the concealment, the absence of intent to conceal must be affirmatively found. Walser's Digest, 72.

INDICTMENT for carrying concealed about the person a pistol, tried before *Robinson, J.,* at November Term, 1899, of IREDELL Superior Court. The jury rendered a special verdict, and upon the finding of facts, his Honor held the defendant was not guilty, and discharged him. The Solicitor excepted and appealed to Supreme Court.

The special verdict appears in the opinion.

*Attorney-General,* for the State.

No counsel, *contra.*

CLARK, J.   The defendant is indicted under The Code, sec. 1005, which makes it a misdemeanor "if anyone, except when on his own premises, shall carry concealed about his person any deadly weapon"—reciting the kinds of weapons, and excepting certain classes of persons, and making the possession about the person presumption of concealment.   The special verdict finds that "the defendant had in his hip pocket *concealed* a pistol, off his own premises."   This comes within the letter and meaning of the statute.   The special verdict further finds that the defendant was "carrying the pistol for the purpose of delivery to a party to whom he had sold it; that it accidentally dropped from his pocket, while engaged in catching a chicken loose upon the streets."

In *State v. Dixon,* 114 N. C., 850, it is said:   "In trials for this offense it must be borne in mind that the guilty intent is the intent to carry the weapon concealed, and does not depend upon the intent to use it.   The object of this statute is not to forbid the carrying of a deadly weapon for use, but to prevent the opportunity and temptation to use it arising from concealment.   If the weapon is carried for lawful use, or even for unlawful use, the defendant would not be guilty under this section, if the weapon is carried openly, since this statute applies not to the act of carrying the weapon or the purpose in carrying it, but to the manner of carrying it." This case reviewed previous authorities, and has itself been cited and followed in *State v. Pigford,* 117 N. C., 748; *State . v. Reams,* 121 N. C., 556.

In this last case, FAIRCLOTH, C. J., says:   "The offence of carrying a concealed weapon about one's person and off his own premises consists in the guilty intent to carry it concealed, and not in the intent to use it, and the possession of the deadly weapon raises the presumption of guilt, which presumption may be rebutted by the defendant."   Here, the

125——45

special verdict finds that the deadly weapon was, in fact, carried concealed, and the jury do not find that there was no intent to "carry it concealed"—which is what the statute forbids. The jury find that the purpose of carrying it was for delivery to another, but, as the above decisions hold, the *purpose* of carrying it is not to the point. The question is, as to the *manner* of carrying, whether it was concealed or not, and it might be shown in defense that there was no intent to conceal it, which the jury might find when the deadly weapon is conveyed simply as merchandise. But the absence of intent to conceal must be affirmatively found to rebut the presumption arising from the concealment, and the jury not having found that, notwithstanding the concealment, there was no intent to conceal, judgment upon the special verdict should have been entered against the defendant.

The authorities upon this subject are conveniently grouped in Walser's Digest, 72; 5 Am. and Eng. Enc., 734 (2nd edition).

Reversed.